UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AL MAHA TRADING<br>& CONTRACTING HOLDING COMPANY,<br>a Saudi Arabian limited liability company, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-01920 |
| | ) | |
| W.S. DARLEY & CO., an Illinois corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Al Maha Trading & Contracting Holding Company ("Al Maha"), a Saudi Arabian limited liability company, by its undersigned attorney, for its Complaint against W.S. Darley & Co. ("Darley"), states as follows:

### Introduction

1.      In this Complaint, Al Maha asserts various contract, tort and statutory claims for relief against Darley, which holds itself out as an expert in the international sale of firefighting equipment, including fire trucks. Al Maha's claims against Darley arise, *inter alia*, from Darley's selection and sale of six fire trucks to Al Maha specifically for use in Saudi Arabia. In fact, the fire trucks were not fit for use in Saudi Arabia. The fire trucks were equipped with heavy duty diesel engines and were intended for sale only in the U.S. and Canadian markets, because, in compliance with U.S. environmental standards in effect since January 2007, the engines were designed and built to run only on ultra low sulfur diesel fuel. Ultra low sulfur diesel fuel has been available in the United States since 2007, but it is not available in most of

1

the rest of the world, including in Saudi Arabia, where, at all relevant times, only high sulfur diesel fuel was available.

## Parties and Jurisdiction

2.     Al Maha is limited liability company organized under the laws of the Kingdom of Saudi Arabia.  Under Saudi Arabian law, Al Maha became the successor in interest to all rights and liabilities of Al Maha Trading & Contracting Establishment when said Establishment was converted to a limited liability company.  Al Maha has its principal place of business in Al-Khobar, Saudi Arabia.  Al Maha specializes in the fields of fire protection, prevention, hazard mitigation, emergency medical services, and the provision of manpower for these fields, serving the Saudi Arabian and neighboring markets.

3.     On information and belief, Darley is incorporated under the laws of the state of Illinois, and has its principal place of business in Itasca, Illinois.

4.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State, *i.e.*, Darley, and citizens or subject of a foreign state, *i.e.*, Al Maha.

5.     Venue for this action is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(1) and (2),  because (1) Darley, the sole defendant, resides in this judicial district, and (2) a substantial part of the events or omissions giving rise to Al Maha's claims occurred in this judicial district.

## Facts

6.     On or about August 24, 2008, Al Maha entered into a contract with Rabigh Refining and Petrochemicals Company, L.L.C., ("Petro Rabigh") to provide firefighting services

and equipment, including fire trucks, at Petro Rabigh's refinery located in or around Rabigh, Saudi Arabia (the "Petro Rabigh Contract").

7.     Darley represents, on its website, *inter alia*, as follows: "Since 1908, Darley has been dedicated to serving the World's Fire and Emergency Services." "Our entire company is committed to customer satisfaction. We are dedicated to excellence and offer a diverse line of quality products and services through progressive design, manufacturing and distribution." "[Darley's] involvement in the Fire Industry spans over a century and four generations of Darleys." "Darley builds Fire Trucks, manufactures Champion Fire Pumps and sells Fire Fighting and Emergency Equipment through its international catalog." "[Darley] has been supplying apparatus, pumps and firefighting equipment to the United States Federal Government as well as other governments and agencies around the world for over 60 years." Darley states that it supplied a "major order in recent years" of, among other things, "500 HM pumps for Saudi Arabia Civil Defense."

8.     At some time in 2008, Al Maha, through Mr. Christopher Gale ("Mr. Gale"), a U.S. national who worked as a manager for Al Maha in Saudi Arabia on the Petro Rabigh project, approached Darley, based upon Darley's worldwide expertise in sales of firefighting equipment, including fire trucks, to purchase firefighting equipment, including fire trucks, that would satisfy the requirements of the Petro Rabigh Contract and otherwise be fit for service in Saudi Arabia. Al Maha provided Darley with the specifications required for fire trucks under the Petro Rabigh contract. The Petro Rabigh Contract specifications for fire trucks, however, did not specify the engine-type or fuel-type for the fire trucks. Darley knew that Al Maha needed the fire trucks for service and use in Saudi Arabia. Al Maha relied upon Darley's expertise in the international sale of firefighting equipment, including fire trucks, to supply Al Maha with fire

trucks that met the specifications under the Petro Rabigh contract (which did not include engine-type or fuel-type specifications) and that would otherwise be fit for service and use in Saudi Arabia.  In further reliance upon Darley's services, Al Maha did not view or inspect the Fire Trucks before purchasing them.

  9.  Darley undertook to locate and select fire trucks for Al Maha that would satisfy the specifications of the Petro Rabigh Contract (which did not include an engine-type or fuel-type specification) and that would otherwise be fit for service and use in Saudi Arabia.

  10.  In early to mid-2009, Darley sold to Al Maha, *inter alia*, the following six fire trucks (the "Fire Trucks"):

- Vehicle 1 – 2007 Ferrara Truck, Inferno model, VIN No. 1F95080387H140469, manufactured by Farrara Fire Apparatus, with a Cummings heavy duty diesel engine designed and built for ultra low sulfur diesel fuel use.  This vehicle had over 12,000 miles on the odometer.  Purchase Price: US$1,015,000.00;

- Vehicle 2 – Ferrara Inundator, VIN No. 1F95148287H140473, a Foam Pumper that had been on display in Dubai, with a Detroit Diesel diesel engine, designed and built for ultra low sulfur diesel fuel use.  Purchase Price: US$850,000.00;

- Vehicle 3 – 2008 International Truck, Model 4400 SBA 4X2, VIN No. 1HTMKAZR68H557868, a Farrara 2 door international pumper, with a diesel engine designed and built for ultra low sulfur diesel fuel use.  This vehicle had over 6,000 miles on the odometer.  Total Purchase Price for Vehicles 3, 4 and 5: US$859,000.00;

- Vehicle 4 – 2008 International Truck, Model 4400 SBA 4X2, VIN No. 1HTMKAZR68H557869, also a Farrara 2 door international pumper, with a diesel engine, designed and built for ultra low sulfur diesel fuel use.  This vehicle had over 6,000 miles on the odometer.  Total Purchase Price for Vehicles 3, 4 and 5: US$859,000.00;

- Vehicle 5 – 2008 International Truck, Model 440 SBA 4X2, VIN no. 1HTMKAZR68H557870, also a Farrara 2 door international pumper, with a diesel engine, designed and built for ultra low sulfur diesel fuel use.  This vehicle had over 9,000 miles on the odometer.  Total Purchase Price for Vehicles 3,4 and 5: US$859,000.00; and

- Vehicle 6 – 2008 Freightliner Truck, Model No. M2106, VIN No. 1FVACYBS48HZ89558, a 2008 water tanker, with Cummings diesel engine, designed and built for ultra low sulfur diesel fuel use.  Purchase Price: $207,000.00.

- Total purchase price ("Purchase Price") for the Fire Trucks, paid directly to Darley through banking channels (exclusive of other costs, including, but not limited to, shipping charges and customs duties): US$2,931,000.00

True and correct copies Al Maha's bank transfers and advices for the purchases are attached hereto as part of Group Exhibit 1. In addition, Certificates of Origin for a Vehicle and Darley's Commercial Invoices for the Fire Trucks (which do not show the correct purchase price for the Fire Trucks) are attached as part of Group Exhibit 1 hereto. To the extent that other or additional documents might exist that memorialize the terms and conditions of Darley's sale of the Fire Trucks to Al Maha, Al Maha has not located such documents to date.

11. Al Maha paid Darley the Purchase Price through banking channels and Letters of Credit opened between the corresponding banks of both parties for the purpose of the sale and performed all other terms and conditions relating to the purchase and sale of the Fire Trucks, if any, not otherwise excused.

12. Darley had the Fire Trucks shipped to Al Maha in Saudi Arabia sometime in early or mid- 2009.

13. At some point after receiving shipment of the Fire Trucks, Al Maha began to learn that the Fire Trucks could not be operated in Saudi Arabia due to a diesel fuel issue. In particular, at some point after receiving shipment of the Fire Trucks, Al Maha ultimately learned as follows: In the U.S., the diesel fuel for Heavy Duty (Diesel) Engines ("HDEs") (with which each of the Fire Trucks is equipped) is Ultra Low Sulfur Diesel ("ULSD"), which contains less than 15 parts per million ("PPM") of sulfur. ULSD was introduced to comply with U.S. Environmental Protection Agency ("EPA") standards, which are applicable to every HDE manufacturer effective from January 1, 2007. Since January 1, 2007, ULSD has been available in the United States, but not in most of the rest of the world, including in Saudi Arabia. At all relevant times, in Saudi Arabia, only High Sulfur Diesel ("HSD"), containing 500 PPM of sulfur,

has been available. The Fire Trucks could not be run on the HSD available in Saudi Arabia without causing substantial engine damage, and could not be retrofitted to run on HSD.

14. At some point after Al Maha received shipment of the Fire Trucks, Saudi agents of the engine manufacturers for the Fire Trucks refused to service or issue any warranty on the Fire Truck's engines, despite repeated requests and contacts from Al Maha, because the Fire Truck's engines were unfit for the Saudi market.

15. In addition, at some point after Al Maha purchased the Fire Trucks, Al Maha learned that, contrary to its expectation and understanding, the Fire Trucks were not new. As alleged in paragraph 10 *supra*, Vehicle 1 had in excess of 12,000 miles on its odometer; Vehicles 3 and 4 had in excess of 6,000 miles on their odometers; and Vehicle 5 had in excess of 9,000 miles on its odometer. Darley did not disclose these facts to Al Maha prior to the sale of the Fire Trucks.

16. At some point after Al Maha received shipment of the Fire Trucks, Al Maha received written communications from a person who claimed to be close to Mr. Gale indicating that Mr. Gale received a payment in excess of $50,000 from Darley in connection with Al Maha's purchase of the Fire Trucks. Such a payment was not disclosed to Al Maha by Darley or by Mr. Gale.

17. At some point after Al Maha purchased the Fire Trucks, Al Maha learned that the prices that Darley charged Al Maha for the Fire Trucks were significantly higher than prevailing market prices for the Fire Trucks. In particular, Al Maha has obtained information as to the original dealer cost for the Fire Trucks and the average dealer profit margin. Even without allowing for discounts for the fact that – unknown to Al Maha – some if not all of the Fire Trucks were demonstrator models and/or had significant mileage on their odometers, Darley

6

charged Al Maha hundreds of thousands of U.S. dollars over prevailing market prices for the Fire Trucks.

18.     In and around the period from mid- to late 2010, Al Maha communicated to Darley, *inter alia*, in substance that the Fire Trucks could not be operated in Saudi Arabia due to the diesel fuel issue alleged *supra*; and that the Fire Trucks showed significant mileage on their odometers as alleged *supra*. Darley made no offer to correct or redress these problems.

19.     Meanwhile, Al Maha diligently looked into whether it could somehow use or sell the Fire Trucks in Saudi Arabia or in the Persia Gulf region in which it conducted business. In or around early 2011, an expert retained by Al Maha to investigate the fuel issue relating to the Fire Trucks reported to Al Maha that the Fire Trucks were equipped with heavy duty diesel engines that were designed, built and certified only for use of ULSD, per U.S. environmental regulations in effect since January 2007, and that using more than a few tanks of the HSD available in Saudi Arabia would lead to "total engine destruction," and that the Fire Truck engines could not be retrofitted to use HSD.

20.     In addition, in February of 2011, Al Maha's expert provided Al Maha with a five (5) page Freightliner, LLC document (the "Freightliner Critical Warning"), a true and correct copy is attached as Exhibit 2 hereto. The Freightliner Critical Warning stated, in part, as follows:

### CRITICAL WARNING for ALL US and CANADIAN DEALERS REGARDING the EXPORT of VEHICLES EQUIPPED with US EPA 2007 ENGINES:

It is extremely important that all Freightliner Trucks, Sterling Trucks and Western Star Trucks dealers, body companies and customers are fully aware of the consequences of exporting trucks with EPA 2007 diesel engines into markets outside of the US or Canada. As is explained below, vehicle performance and customer satisfaction will be seriously affected if the required ultra low sulfur diesel fuel is not used. Repairs or modifications undertaken to rectify damages

will not be covered under warranty by any of the engine manufacturers or by Freightliner, LLC.

**US and Canadian dealer sales of trucks equipped with EPA 2007 engines outside the US or Canada are expressly prohibited without previous authorization.**

*See* Freightliner Critical Warning, attached as Ex. 2 hereto (emphasis in original).

21.     Vehicle 6 was a 2008 Freightliner Truck equipped with an "EPA 2007 diesel engine" as described in the Freightliner Critical Warning. While the other Fire Trucks were not Freightliner Trucks, the substance of the Freightliner Critical Warning against export of the vehicles outside the US and Canada – to countries where ULSD is unavailable -- would apply equally to the other Fire Trucks, since they were also equipped with HDEs designed and built to comply with the 2007 EPA standard, *i.e.*, for use only with ULSD, which, at all relevant times, was not available in Saudi Arabia, where only HSD was available.

22.     On information and belief, Darley, with its advertised extensive experience in the international sale of firefighting equipment, including fire trucks, and specifically including the sale of fire trucks to the Saudi Arabian market, knew that the Fire Trucks, which were equipped with HDEs designed, built and certified to run on ULSD in compliance with 2007 EPA standards, could not be operated in most of the rest of the world -- and particularly including not in Saudi Arabia, due to the lack of availability of ULSD in Saudi Arabia, where, at all relevant times, only HSD was available. In the alternative, Darley should have known this. Darley failed to disclose this information to Al Maha. At the time of the sale and for a considerable period thereafter, Al Maha lacked knowledge or information regarding this diesel fuel issue.

23.     Subsequently, Al Maha lost any opportunity to sell or use the Fire Trucks in Saudi Arabia or the Persian Gulf region, including under the Petro Rabigh Contract, because the Fire Trucks were equipped with HDEs that could only use ULSD, which is unavailable in Saudi

Arabia and the Persian Gulf region, where only HSD is available. Moreover, the Fire Trucks could not be retrofitted to use HSD available in Saudi Arabia and the Persian Gulf region.

24.     To the extent that Al Maha's prior communications with Darley might ultimately somehow be found insufficient as to Al Maha's intent to reject and/or revoke acceptance (if there was acceptance) of the Fire Trucks, on March __, 2012, Al Maha's counsel provided Darley with notice of rejection and/or revocation of acceptance of the Fire Trucks.

<u>Counts</u>

<u>COUNT I</u>
<u>Breach Of Implied Warranty Of Fitness For Particular Purpose</u>
<u>Remedy Pursuant To Section 2-711 Of The UCC</u>

25.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count I.

26.     Section 2-315 of the UCC provides generally that every contract for the sale of goods contains an implied warranty of fitness for a particular purpose, as follows:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be for such purpose.

810 ILCS 5/2-315.

27.     Under the facts set forth above, Darley at the time of contracting had reason to know the following: that Al Maha required fire trucks that, in addition to meeting the express specifications of the Petro Rabigh Contract (which did not include engine-type or fuel-type specifications), would be fit for the purpose of service in Saudi Arabia, and (2) that Al Maha was relying on Darley's skill and judgment to select and furnish fire trucks that, in addition to

9

meeting the express specifications of the Petro Rabigh Contract, would be fit for the purpose of service in Saudi Arabia.

28.     Under the facts set forth above, Darley breached the implied warranty of fitness for a particular purpose, in that the Fire Trucks could not be used by Al Maha in service in Saudi Arabia without causing substantial engine damage, because they were equipped with HDEs designed, built and/or certified for use with ULSD in compliance with 2007 U.S. environmental standards and, at all relevant times, USLD was not available in Saudi Arabia, where only HSD was available.

29.     Under the facts set forth above, Al Maha paid the purchase price for the Fire Trucks and performed all other terms and conditions relating to the sale of the Fire Trucks, if any, not otherwise excused.

30.     Pursuant to section 2-711 of the UCC, a buyer who rightfully rejects or justifiably revokes acceptance of goods may cancel the contract and recover the amount of the price paid, and obtain other relief, 810 ILCS 5/2-711; and pursuant to section 2-715 of the UCC, may recover incidental and consequential damages, 810 ILCS 5/2-715.

31.     Under the facts set forth above, Al Maha rightfully rejected the Fire Trucks and/or justifiably revoked acceptance of the Fire Trucks (if there was an acceptance)

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley cancelling the contract and awarding a money judgment to Al Maha in at least the amount that Al Maha paid for the Fire Trucks ($2,931,000.00), granting such other and additional relief that is just and equitable, and granting Al Maha its incidental and consequential damages.

## COUNT II
## Breach Of Implied Warranty Of Fitness For Particular Purpose
## Remedy Pursuant To Section 2-714 Of The UCC

32.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count II.

33.     Section 2-315 of the UCC provides generally that every contract for the sale of goods contains an implied warranty of fitness for a particular purpose, as follows:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be for such purpose.

810 ILCS 5/2-315.

34.     Under the facts set forth above, Darley at the time of contracting had reason to know the following: that Al Maha required fire fighting trucks that, in addition to meeting the express specifications of the Petro Rabigh Contract (which did not include an engine-type or fuel-type specification), would be fit for the purpose of service in Saudi Arabia, and (2) that Al Maha was relying on Darley's skill and judgment to select and furnish fire trucks that, in addition to meeting the express specifications of the Petro Rabigh Contract, would be fit for the purpose of service in Saudi Arabia.

35.     Under the facts set forth above, Darley breached the implied warranty of fitness for a particular purpose, in that the Fire Trucks could not be used by Al Maha in service in Saudi Arabia without causing substantial engine damage, because they were equipped with HDEs designed, built and/or certified for use with ULSD in compliance with 2007 U.S. environmental

standards and, at all relevant times, USLD was not available in Saudi Arabia, where only HSD was available.

36.     Under the facts set forth above, Al Maha paid the purchase price for the Fire Trucks and performed all other terms and conditions relating to the sale of the Fire Trucks, if any, not otherwise excused.

37.     Section 2-714 of the UCC sets forth the buyer's damages for breach in regard to accepted goods, as follows:

> (1)     Where the buyer has accepted goods and given notification (subsection 3 of Section 2-607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable;
> (2)     The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
> (3)     In a proper case any incidental and consequential damages under the next section may also be recovered.

810 ILCS 5/2-714.

38.     Pursuant to section 2-715 of the UCC, a buyer may recover incidental and consequential damages resulting from seller's breach.  810 ILCS 5/2-715.

39.     Under the facts set forth above, to the extent that Al Maha might be deemed to have accepted the Fire Trucks, Al Maha provided Darley with sufficient notice pursuant to section 2-607 of the UCC.  Darley's tender of the Fire Trucks was not conforming in that Darley tendered Fire Trucks that did not conform to the implied warranty of fitness for a particular purpose, which resulted in loss to Al Maha.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley awarding a money judgment to Al Maha in at least the amount of

$2,931,000.00, granting such other and additional relief that is just an equitable, and granting Al Maha its incidental and consequential damages.

## COUNT III
### Equitable Remedies Of Rescission And Restitution For Unconscionable Contract

40.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count III.

41.     Under Illinois law and Section 2-302 of the UCC, 810 ILCS 5/2-302, a buyer is entitled to the equitable remedies of rescission and restitution for a contract that was unconscionable at the time it was made. Under Illinois law, an unconscionable bargain is one which no reasonable person would make and which no honest person would accept.

42.     Under the facts set forth above, the contract between Al Maha and Darley for the sale of the Fire Trucks was unconscionable.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley rescinding the contract for the sale of the Fire Trucks, awarding Al Maha at least the amount of $2,931,000.00, granting other and additional relief that is just an equitable, and granting Al Maha its incidental and consequential damages.

## COUNT IV
### Equitable Remedies Of Rescission And Restitution For Mutual Mistake

43.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count IV.

44.     Under Illinois law, rescission for mutual mistake is proper where (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is

unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party *in status quo*.

45.     Under the facts set forth above, rescission for mutual mistake is proper.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley rescinding the contract for the sale of the Fire Trucks and awarding a money judgment to Al Maha in at least the amount of $2,931,000.00, granting such other and additional relief that is just and equitable, and granting Al Maha its incidental and consequential damages.

## COUNT V
## Equitable Remedies Of Rescission And Restitution For Unilateral Mistake

46.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count V.

47.     Under Illinois law, rescission for unilateral mistake is proper where (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party *in status quo*.

48.     Under the facts set forth above, rescission for unilateral mistake is proper.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley rescinding the contract for the sale of the Fire Trucks and awarding a money judgment to Al Maha in at least the amount of $2,931,000.00, granting such other and additional relief that is just and equitable, and granting Al Maha its incidental and consequential damages.

14

## COUNT VI
## Fraud

49.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count VI.

50.     Under Illinois law, the elements of a common law fraud claim based upon fraudulent omissions are (1) the concealment of a material fact when there is a duty to disclose; (2) known or believed to be false by the person making it; (3) intent to induce the plaintiff to act; (4) action by plaintiff in justifiable reliance on the truth of the statement; and (5) damages resulting from the reliance.

51.     Under the facts set forth above, Darley concealed from Al Maha and failed to disclose that the material facts that Fire Trucks would not be able to be operated in Saudi Arabia, because they were equipped with HDEs designed, built and certified only to use ULSD, in compliance with 2007 US. EPA standards; and ULSD, while it has been available in the US since January 2007, was not, at all relevant times, available in Saudi Arabia, where, at all relevant times, only HSD was available.  Darley also failed to disclose prior to Al Maha's purchase of the Fire Trucks that some if not all of the Fire Trucks had extensive mileage on their odometers.  Darley had a duty to disclose such facts, because Al Maha relied upon Darley's expertise and judgment in the international sale of firefighting equipment, including fire trucks, to select and provide to Al Maha fire trucks that not only met Al Maha's specifications, but that would be fit for service in Saudi Arabia, and accurately to disclose and describe the condition of the Fire Trucks, including, but not limited to, the fact that several if not all of the Fire Trucks had extensive mileage on their odometers.

52.     Under the facts set forth above, on information and belief, Darley knew that the Fire Trucks would not be able to be operated in Saudi Arabia, because they were equipped with

HDEs designed, built and certified to use ULSD, which was not available in Saudi Arabia and new that several if not all of the Fire Trucks had extensive mileage on their odometers.

53.     Under the facts set forth above, Darley intended to induce Al Maha to purchase the Fire Trucks.

54.     Under the facts set forth above, Al Maha purchased the Fire Trucks in reasonable reliance on Darley's selection of the Fire Trucks as meeting Al Maha's express specifications and that would be fit for service in Saudi Arabia and description of the condition of the Fire Trucks, including their mileage.

55.     Under the facts set forth above, Al Maha was damaged resulting from its reliance on Darley's selection and sale of the Fire Trucks to Al Maha.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley in an amount of at least $2,931,000.00, granting Al Maha an award for its incidental and consequential damages, punitive damages, Al Maha's reasonable attorneys' fees, and such other or additional relief as is just and equitable.

## COUNT VII
## Rescission For Fraudulent Inducement

56.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count VII.

57.     Under Illinois law, a party is entitled to rescission of a contract induced by fraud, including fraudulent omissions, the elements of which are: (1) the concealment of a material fact when there is a duty to disclose; (2) known or believed to be false by the person making it; (3) intent to induce the plaintiff to act; (4) action by plaintiff in justifiable reliance on the truth of the statement; and (5) damages resulting from the reliance.

58.     Under the facts set forth above, Darley concealed from Al Maha and failed to disclose that the material facts that Fire Trucks would not be able to be operated in Saudi Arabia without causing substantial engine damage, because, in compliance with 2007 U.S. EPA standards, they were equipped with HDEs designed, built and certified to use ULSD, which was not available in Saudi Arabia (where, at all relevant times, only HSD was available), and Darley had a duty to disclose such a facts, because Al Maha relied upon Darley's expertise and judgment in the international sale of firefighting equipment, including fire trucks, to select and provide to Al Maha fire trucks that not only met Al Maha's express specifications under the Petro Rabigh contract, but that would be fit for use in Saudi Arabia.

59.     Under the facts set forth above, on information and belief, Darley knew that the Fire Trucks would not be able to be operated in Saudi Arabia without causing substantial engine damage, because, in compliance with 2007 U.S. EPA standards, they were equipped with HDEs designed, built and certified to use ULSD, which was not available in Saudi Arabia (where, at all relevant times, only HSD was available).

60.     Under the facts set forth above, Darley intended to induce Al Maha to purchase the Fire Trucks.

61.     Under the facts set forth above, Al Maha purchased the Fire Trucks in reasonable reliance on Darley's selection of the Fire Trucks as meeting Al Maha's express specifications under the Petro Rabigh Contract and need for the Fire Trucks fit to operate in Saudi Arabia.

62.     Under the facts set forth above, Al Maha was damaged resulting from its reliance on Darley's selection and sale of the Fire Trucks to Al Maha.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley, rescinding the contract for the sale of the Fire Trucks and awarding

17

Al Maha an amount of at least $2,931,000.00, granting Al Maha an award for its incidental and consequential damages, punitive damages, Al Maha's reasonable attorneys' fees, and such other or additional relief as is just and equitable.

## COUNT VIII
### Negligent Misrepresentation

63.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count VIII.

64.     Under Illinois law, the elements of a common law fraud claim based upon fraudulent omissions are (1) the concealment of a material fact when there is a duty to disclose; (2) known or believed to be false by the person making it; (3) intent to induce the plaintiff to act; (4) action by plaintiff in justifiable reliance on the truth of the statement; and (5) damages resulting from the reliance. The elements of the tort of negligent misrepresentation are essentially the same as for fraud, except that (1) the defendant's carelessness or negligence in ascertaining the truth will suffice for a cause of action, and (2) the plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information.

65.     Under the facts set forth above, Darley concealed from Al Maha and failed to disclose that the material facts that Fire Trucks would not be able to be operated in Saudi Arabia without causing substantial engine damage, because, consistent with 2007 U.S. EPA standards, they were equipped with HDEs designed, built and certified to use ULSD, which, at all relevant times, was not available in Saudi Arabia, and Darley had a duty to disclose such a facts, because Al Maha relied upon Darley's expertise and judgment in the international sale of firefighting equipment, including fire trucks, to select and provide to Al Maha fire trucks that not only met Al Maha's express specifications under the Petro Rabigh Contract (which did not contain engine-type or fuel-type specifications), but that would also be fit for use in Saudi Arabia.

66.     Under the facts set forth above, if Darley in fact did not know (which, on information and belief it did know), Darley should have known or ascertained in connection with its selection of fire trucks for Al Maha that the Fire Trucks would not be able to be operated in Saudi Arabia without causing substantial engine damage, because, consistent with 2007 U.S. EPA standards, they were equipped with HDEs designed, built and certified to use ULSD, which, at all relevant times, was not available in Saudi Arabia (where only HSD was available).

67.     Under the facts set forth above, Darley intended to induce Al Maha to purchase the Fire Trucks.

68.     Under the facts set forth above, Al Maha purchased the Fire Trucks in reasonable reliance on Darley's selection of the Fire Trucks as meeting Al Maha's express specifications and need for the Fire Trucks to operate in Saudi Arabia.

69.     Under the facts set forth above, Al Maha was damaged resulting from its reliance on Darley's selection and sale of the Fire Trucks to Al Maha.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley in an amount of at least $2,931,000.00, granting Al Maha an award for its incidental and consequential damages, punitive damages, Al Maha's reasonable attorneys' fees, and such other or additional relief as is just and equitable.

## COUNT IX
### Violation Of The Illinois Consumer Fraud Act

70.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count IX.

71.     The Illinois Consumer Fraud Act ("ICFA") prohibits:

Unfair... or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise,

misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact... in the conduct of any trade or commerce.

815 ILCS 505/2.

72.     To succeed on a claim under Section 2 of the ICFA, the plaintiff must establish the following elements: (1) a deceptive act or practice by the defendant; (2) the defendant's intend that the plaintiff rely on the deception; (3) that the deception occur in the course of conduct involving trade and commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deception.  Unlike common law fraud, a claim for violation of Section 2 of the IFCA does not require reliance on the part of plaintiff.

73.     Under the facts set forth above, Darley engaged in a deceptive act or practice, by failing to disclose and concealing from Al Maha the material facts that the Fire Trucks would not be able to be operated in Saudi Arabia without causing substantial engine damage, because, consistent with 2007 U.S. EPA standards, they were equipped with HDEs designed, built and certified only to use ULSD, which was not available in Saudi Arabia (where, at all relevant times, only HSD was available).  Darley also failed to disclose that several, if not all, of the Fire Trucks had extensive mileage on their odometers.  To the extent that such concealment requires a duty to disclose to state a claim under Section 2 of the IFCA, Darley had a duty to disclose such facts, because Al Maha relied upon Darley's expertise and judgment in the international sale of firefighting equipment, including fire trucks, to select and provide to Al Maha fire trucks that not only met Al Maha's specifications (which did not contain engine-type or fuel-type specifications), but that would also be fit for service in Saudi Arabia, and to accurately describe their condition, including if they had extensive mileage on their odometers.

74.     Under the facts set forth above, to the extent that Darley's knowledge is required to establish a claim predicated on a deceptive act or practice under Section 2 of the IFCA, on information and belief, Darley knew that the Fire Trucks would not be able to be operated in Saudi Arabia, because, consistent with 2007 U.S. EPA standards, they were equipped with HDEs designed, built and certified only to use ULSD, which was not available in Saudi Arabia, where, at all relevant times, only HSD was available.  In addition, Darley knew the mileage on the Fire Trucks' odometers.

75.     Under the facts set forth above, Darley intended to induce Al Maha to purchase the Fire Trucks in reliance on Darley's deception.

76.     Under the facts set forth above, Darley's deception occurred in a course of conduct involving trade and commerce, namely, the selection, purchase and sale of the Fire Trucks.

77.     Under the facts set forth above, Darley's deception proximately caused actual damage to Al Maha.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley, awarding Al Maha a money judgment in the amount of at least $2,931,000.00, granting Al Maha an award for its incidental and consequential damages, punitive damages, Al Maha's reasonable attorneys' fees, and such other or additional relief as is just and equitable.

### COUNT X
### Breach Of Fiduciary Duty

78.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count X.

79.     Under Illinois law, to recover for breach of fiduciary duty, a plaintiff must prove that a fiduciary duty exists, that the fiduciary duty was breached, and that the breach proximately caused the injury of which the plaintiff complains.  A fiduciary duty arises either as a matter of law or by meeting a "special circumstances" test.  Particular relationships, including principal-agent, constitute fiduciary relationships as a matter of law.  A fiduciary relationship might also arise as a result of the special circumstances of the parties' relationship, where one party places trust in another so that the other gains, *inter alia*, influence over the other.

80.     Under the facts set forth above, Darley owed fiduciary duties to Al Maha, either by acting as Al Maha's agent for the selection of fire trucks that would meet Al Maha's specifications and need for fire trucks serviceable for use in Saudi Arabia, or as a result of the special circumstance that Al Maha relied upon Darley's expertise and judgment in the international sale of fire trucks to select fire trucks that met Al Maha's express specifications and that would be fit for use in Saudi Arabia, and to accurately describe the condition of the Fire Trucks that Darley selected, including whether they had extensive mileage on their odometers; and Darley accepted Al Maha's reliance in selecting fire trucks for Al Maha.

81.     Under the facts set forth above, Darley breached its fiduciary duties to Al Maha, selecting and selling to Al Maha Fire Trucks that could not be operated in Saudi Arabia without causing substantial engine damage, because, consistent with 2007 U.S. EPA standards, they were equipped with HDEs designed, built and certified only for use with ULSD, which was not available in Saudi Arabia, where, at all relevant times, only HSD was available.  Darley also breached its fiduciary duties by not disclosing pre-sale that several, if not all, of the Fire Trucks had extensive mileage on their odometers.

22

82.     Under the facts set forth above, Al Maha was damaged by Darley's breach of its fiduciary duties to Al Maha.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley, awarding Al Maha a money judgment in the amount of at least $2,931,000.00, granting Al Maha an award for its incidental and consequential damages, punitive damages, Al Maha's reasonable attorneys' fees, and such other or additional relief as is just and equitable.

<u>COUNT XI</u>
<u>Constructive Fraud</u>

83.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count XI.

84.     Under Illinois law, constructive fraud does not require actual dishonesty or intent to deceive.  Instead, constructive fraud consists of any act, statement or omission which amounts to positive fraud or which is construed as fraud by the courts because of its detrimental effect upon public interests and public or private confidence.   A breach of fiduciary duty creates a presumption of constructive fraud.

85.     Under the facts set forth above, Darley's failure to inform Al Maha that the Fire Trucks would not operate in Saudi Arabia without causing substantial engine damage, because, consistent with 2007 U.S. EPA standards, they were equipped with HDEs designed, built and certified to run only on ULSD, which was not available in Saudi Arabia (where, at all relevant times, only HSD was available), and failure to disclose pre-sale the mileage on the Fire Trucks' odometers, amounts to a positive fraud which constitutes constructive fraud because of its detrimental effect upon public interests and public or private confidence.

23

86.     In addition, under the facts set forth above and in Count X above, Darley's breach of its fiduciary duty to Al Maha creates a presumption of constructive fraud.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley, awarding Al Maha a money judgment in the amount of at least $2,931,000.00, granting Al Maha an award for its incidental and consequential damages, punitive damages, Al Maha's reasonable attorneys' fees, and such other or additional relief as is just and equitable.

### COUNT XII
### Inducement Of Breach Of Fiduciary Duties

87.     Al Maha incorporates by reference paragraphs 1-24 of the Complaint as and for this paragraph of Count XII.

88.     Under Illinois law, a third party who colludes with a fiduciary in committing a breach of duty, induces or participates in such a breach, and obtains the benefits there from is directly liable to the aggrieved party.

89.     Under the facts set forth above, Mr. Gale, as Al Maha's manager and representative in connection with the purchase of the Fire Trucks, owed fiduciary duties to Al Maha with respect to said purchase.  On information and belief, Darley made a payment to Mr. Gale, to induce him to breach his fiduciary duties by purchasing the Fire Trucks from Darley at an inflated price substantially above the prevailing market price at the time for the Fire Trucks and without seeking a more competitive price from Darley or from some other potential supplier. As a result, Darley obtained the benefits of Mr. Gale's breach of his fiduciary duties, in that it procured the sale of the Fire Trucks and at a substantially higher price than prevailed in the market at the time for such vehicles. Also, as a result of Darley's inducing Mr. Gale's breach of

his fiduciary duties, Al Maha was damaged in that it paid Darley a substantially higher price for the Fire Trucks than prevailed in the market at the time.

WHEREFORE, Al Maha respectfully requests that the Court enter judgment in favor of Al Maha and against Darley, awarding Al Maha a money judgment in the amount in excess of $75,000.00, and granting Al Maha an award for its incidental and consequential damages, punitive damages, Al Maha's reasonable attorneys' fees, and such other or additional relief as is just and equitable.

AL MAHA TRADING &
CONTRACTING HOLDING COMPANY


By: /s/ William M. Ejzak
        Its Attorney

William M. Ejzak
William M. Ejzak, Attorney At Law
118 S. Clinton Street, Suite 200
Chicago, Illinois 60661
Ph.: (312) 372-3371
Fax: (312) 377-2402
ARDC No. 6206836