IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AL MAHA TRADING                )
CONTRACTING HOLDING COMPANY,    )
a Saudi Arabian limited liability company,    )
                                )
        Plaintiff,            )
                                )
     v.                     )     No. 12 C 1920
                                )
W.S. DARLEY & CO., an Illinois corporation,   )
                                )
        Defendant.          )

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
W.S. DARLEY & CO.'S RULE 12(B)(6) MOTION TO DIMSMISS [15]

JAMES F. HOLDERMAN, Chief Judge:

On March 16, 2012, plaintiff Al Maha Trading & Contracting Holding Company ("Al Maha") filed a twelve-count complaint against defendant W.S. Darley & Co. ("Darley"), seeking damages and equitable remedies resulting from "Darley's selection and sale of six fire trucks to Al Maha." (Dkt. No. 1 ("Compl.") ¶ 1.)

Pending before the court is Darley's **R**ule 12(b)(6) motion to dismiss. (Dkt. No. 15.) For the reasons set forth below, Darley's motion is granted in part and denied in part. Counts I, III, VI, VII, VIII, X, and XI are dismissed with prejudice, while Counts II, IV, V, IX, and XII remain pending before the court.

BACKGROUND

The following background facts are from the Complaint, as required at this stage of the litigation, and the court has accepted all of the Complaint's well-pleaded factual allegations as true. *Council 31 of the Am. Fed. of State, County & Municipal Employees, AFL-CIO v. Quinn*,

680 F.3d 875, 884 (7th Cir. 2012).

Al Maha is a limited liability company organized under the laws of the Kingdom of Saudi Arabia, with its principal place of business in Al-Khobar, Saudi Arabia. (Compl. ¶ 2.) Al Maha specializes in the fields of fire protection, prevention, hazard mitigation, emergency medical services, and the provision of manpower for these fields, serving the Saudi Arabian and neighboring markets. (*Id.*) On August 24, 2008, Al Maha entered into a contract with Rabigh Refining and Petrochemicals Company, LLC ("Petro Rabigh") to provide firefighting services and equipment, including fire trucks, at Petro Rabigh's refinery located Rabigh, Saudi Arabia (the "Petro Rabigh Contract"). (*Id.* ¶ 6.)

Darley is an Illinois corporation with its principal place of business in Itasca, Illinois. (*Id.* ¶ 3.) On its website, Darley advertises itself as "dedicated to serving the World's Fire and Emergency Services." (*Id.* ¶ 7.) Darley's website states that Darley has over 60 years of experience in "supplying apparatus, pumps and firefighting equipment to . . . governments and agencies around the world" and that it supplied a "major order in recent years" that included "500 HM pumps for Saudi Arabia Civil Defense." (*Id.*)

In 2008, Al Maha's manager for the Petro Rabigh Contract, Christopher Gale ("Gale"), approached Darley to purchase fire trucks that would satisfy the requirements of the Petro Rabigh Contract and otherwise be fit for service in Saudi Arabia. (*Id.* ¶ 8.) The specifications of the Petro Rabigh Contract, which Gale provided to Darley, did not specify engine-type or fuel-type for the desired fire trucks. (*Id.*)

In early to mid-2009, Darley sold Al Maha six fire trucks ("Fire Trucks") for a total purchase price of U.S. $2,931,000.00 and shipped the Fire Trucks to Al Maha in Saudi Arabia. (*Id.* ¶¶ 10, 12.) Al Maha did not view or inspect the Fire Trucks before purchasing them. (*Id.*

¶ 8.)  Darley knew that Al Maha needed the Fire Trucks for service and use in Saudi Arabia, and Al Maha relied on Darley's expertise in the international sale of firefighting equipment, including fire trucks, to supply Al Maha with fire trucks that would be fit for service in Saudi Arabia.  (*Id.* ¶ 8.)

"At some point after receiving shipment of the Fire Trucks," Al Maha "ultimately learned" that the Fire Trucks could not be operated in Saudi Arabia due to a diesel fuel issue.  (*Id.* ¶ 13.) Specifically, the Fire Trucks' diesel engines required Ultra Low Sulfur Diesel ("ULSD"), which is not available in Saudi Arabia.  (*Id.*)  The Fire Trucks could not run on High Sulfur Diesel ("HSD"), the only type of diesel fuel available in Saudi Arabia, and they could not be retrofitted to run on HSD.  (*Id.*)  Additionally, contrary to Al Maha's expectation and understanding, four of the six Fire Trucks were not new and had in excess of 6,000 miles on their odometers.  (*Id.* ¶ 15.) Al Maha also learned that Darley had charged Al Maha "hundreds of thousands of U.S. dollars" over prevailing market prices, and that Darley had given Gale an undisclosed payment "in excess of $50,000" in connection with the sale of the Fire Trucks.  (*Id.* ¶¶ 16-17.)

"In and around the period from mid- to late 2010," Al Maha "communicated to Darley . . . in substance that the Fire Trucks could not be operated in Saudi Arabia due to the diesel fuel issue" and that the Fire Trucks "showed significant mileage on their odometers."  (*Id.* ¶ 18.)

"In or around early 2011," Al Maha's retained expert reported to Al Maha that the Fire Truck engines could not be retrofitted to use HSD and that using more than a few tanks of HSD would lead to "total engine destruction."  (*Id.* ¶ 19.)  In February 2011, Al Maha's expert provided Al Maha with a five-page document from Freightliner, LLC, titled "CRITICAL WARNING for ALL US and CANADIAN DEALERS REGARDING the EXPORT of VEHICLES EQUIPPED with US EPA 2007 ENGINES," which explained that "vehicle

performance and customer satisfaction will be seriously affected if the required ultra low sulfur diesel fuel is not used" and also prohibited the sale of trucks equipped with "EPA 2007" engines outside the U.S. or Canada without previous authorization. (*Id.* ¶ 20.)[1] One of the trucks Darley sold to Al Maha was a 2008 Freightliner Truck, and all six of the Fire Trucks Darley sold to Al Maha were equipped with Heavy Duty (Diesel) Engines ("HDEs") designed to run on ULSD in compliance with the EPA 2007 standards. (*Id.* ¶ 21.)

Al Maha was unable to use or sell the Fire Trucks in Saudi Arabia, including under the Petro Rabigh Contract, or elsewhere in the Persian Gulf region where only HSD is available. (*Id.* ¶¶ 19, 23.) In March 2012, Al Maha's counsel provided Darley with notice of rejection and/or revocation of acceptance of the Fire Trucks. (*Id.* ¶ 24.) Al Maha alleges that Darley knew, or should have known, that the Fire Trucks "could not be operated in most of the rest of the world—and particularly including not in Saudi Arabia, due to the lack of availability of ULSD in Saudi Arabia." (*Id.* ¶ 22.)

Al Maha asserts claims against Darley under Illinois law for: breach of implied warranty of fitness for particular purpose (Counts I and II); unconscionable contract (Count III); mutual mistake (Count IV); unilateral mistake (Count V); fraud (Count VI); fraudulent inducement (Count VII); negligent misrepresentation (Count VIII); violation of the Illinois Consumer Fraud Act (Count IX); breach of fiduciary duty (Count X); constructive fraud (Count XI); and inducement of breach of fiduciary duties (Count XII). Jurisdiction is established in this court pursuant to 28 U.S.C. § 1332(a)(2).

---

[1] Beginning on January 1, 2007, U.S. Environmental Protection Agency ("EPA") standards required the use of ULSD for all Heavy Duty (Diesel) Engines ("HDEs"). (Compl. ¶ 13.)

<u>LEGAL STANDARD</u>

Rule 8 of the Federal Rules of Civil Procedure requires complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 198-99. A complaint is sufficient if it gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010). On the other hand, a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011). Plaintiffs are also not permitted to rely on "mere labels, conclusions, or a formulaic recitation of the elements of a cause of action." *DeGuelle v. Camilli*, 664 F.3d 192, 198 (7th Cir. 2011). When reviewing a 12(b)(6) motion to dismiss, the court "construe[s] all well-pleaded alleged facts, and draw[s] all reasonable inferences, in a light most favorable to the plaintiff." *Council 31*, 680 F.3d at 884.

<u>ANALYSIS</u>

I.    <u>Breach of Implied Warranty of Fitness for Particular Purpose (Remedy Pursuant to Section 2-711 of the UCC) (Count I)</u>

In Count I of its Complaint, Al Maha seeks to cancel its contract with Darley and recover as damages the $2,931,000.00 Al Maha paid for the Fire Trucks, as well as Al Maha's incidental and

consequential damages, alleging that Darley breached the Illinois Uniform Commercial Code's ("UCC") implied warranty of fitness for a particular purpose by selling fire trucks to Al Maha that could not be operated in Saudi Arabia. Darley argues that Count I should be dismissed with prejudice because "Al Maha failed, as a matter of law, to timely reject or revoke its acceptance of the Fire Trucks." (Dkt. No. 19 ("Darley's Mem.") at 5.)

The Illinois UCC provides generally that every contract for the sale of goods includes an implied warranty of fitness for a particular purpose if "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that they buyer is relying on the seller's skill or judgment to select or furnish suitable goods." 810 ILCS 5/2-315. If the buyer "rightfully rejects or justifiably revokes acceptance" of any non-conforming goods, the buyer may cancel the contract and recover the amount of the price paid, as well as incidental and consequential damages. 810 ILCS 5/2-711(1)(b). *See also* 810 ILCS 5/2-713; 810 ILCS 5/2-715.

"Rejection of goods must be within a reasonable time after their delivery or tender [and] . . . is ineffective unless the buyer seasonably notifies the seller." 810 ILCS 5/2-602(1). "Whether a time for taking an action required by the Uniform Commercial Code is reasonable depends on the nature, purpose, and circumstances of the action." 810 ILCS 5/1-205(a); *see also* 810 ILCS 5/1-205(b) ("An action is taken seasonably if it is taken at or within the time agreed or, if no time is agreed, at or within a reasonable time."). If a buyer who has had a reasonable opportunity to inspect the goods "fails to make an effective rejection" under the Illinois UCC, the buyer is deemed to have accepted the goods. 810 ILCS 5/2-606(b).

Even after a buyer has accepted non-conforming goods, the Illinois UCC permits the buyer to revoke acceptance if the non-conformity "substantially impairs" the value of the goods and the

buyer accepted the goods "without discovery of such non-conformity if [the buyer's] acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." 810 ILCS 5/2-608(1)(b). "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." 810 ILCS 5/2-608(2). Like rejection of goods, revocation of acceptance "is not effective until the buyer notifies the seller of it." *Id.*

Viewing the factual allegations of the Complaint in the light most favorable to Al Maha, as required at this stage of the litigation, Al Maha received the Fire Trucks in mid-2009 and rejected them, or revoked acceptance of them, over two and one-half years later, in March 2012.[2] The Complaint does not state exactly when Al Maha discovered the alleged diesel fuel problem. Darley argues that the alleged non-conformity "would have been apparent the very first time (or shortly thereafter) that Al Maha attempted to operate any of the Fire Trucks" and that Al Maha would have discovered the alleged non-conformity if it had timely inspected the Fire Trucks upon receipt. (Dkt. No. 26 ("Darley's Reply") at 3.) It is not clear to the court that this is necessarily so, and the court agrees with Al Maha that its own "technical sophistication (or lack thereof)" is an appropriate factor to consider. (Dkt. No. 22 ("Al Maha's Resp.") at 6.) If the Fire Trucks were delivered with full tanks of ULSD fuel, the alleged non-conformity may not have been "apparent" when the Fire Trucks were first operated. It is also not obvious to the court whether the engines' inability to run on HSD would have been apparent during a standard inspection of the Fire Trucks.

---

[2] Al Maha does not allege or argue that its "communicat[ions]" with Darley in mid- to late 2010 constituted rejection of the Fire Trucks or revocation of acceptance. *See also Midwest Generation, LLC v. Carbon Processing & Reclamation, LLC*, 445 F. Supp. 2d 928, 933 (N.D. Ill. 2006) (Bucklo, J.) ("Mere complaints are not enough to meet the UCC standard for rejection.").

Even with a proper inspection, depending on the size of the fuel tanks and the frequency with which the Fire Trucks were operated, Al Maha may have reasonably failed to discover "the diesel fuel issue" until mid- to late 2010, when it first raised the issue with Darley.

On the other hand, Al Maha has alleged that it was aware of the full extent of the problem at least as early as "early 2011," when Al Maha's retained expert reported that "using more than a few tanks of the HSD available in Saudi Arabia would lead to 'total engine destruction,' and that the Fire Truck engines could not be retrofitted to use HSD." (Compl. ¶ 19.) Al Maha argues that it needed still another year, until March 2012, to assess "its rights under U.S. law" and its options for salvaging its "considerable investment of time and money in acquiring the Fire Trucks and bringing them to Saudi Arabia," and that these factors must be considered as part of the "circumstances of the transaction." (Al Maha Resp. at 6.) Al Maha filed its Complaint against Darley on March 16, 2012, the same month that it provided its notice of rejection or revocation of acceptance.

Whether an action "is to be judged as reasonable" under the Illinois UCC is a determination that "rests with the trier of fact." *Veath v. Specialty Grains, Inc.*, 546 N.E.2d 1005, 1010 (Ill. App. Ct. 5th Dist. 1989) (citing *Heller v. Sullivan*, 372 N.E.2d 1036, 1040 (Ill. App. Ct. 1st Dist. 1978)). This determination depends, in part, on the purpose of the UCC's notice provisions. *See* 810 ILCS 5/1-205. The purpose of a notice of rejection is "to inform the seller that the buyer rejects the goods in sufficient time to give the seller opportunity to cure, and to assist in minimizing the buyer's losses." *EPN-Delaval, S.A. v. Inter-Equip, Inc.*, 542 F. Supp. 238, 247 (S.D. Tex. 1982) (McDonald, J.) (applying Texas UCC (same as Illinois)). Similarly, the purpose of providing notice of a buyer's revocation of acceptance is to prevent surprise to the seller and provide the seller an opportunity to make a reasonable adjustment to the non-conforming goods.

*See* 810 ILCS 5/2-608, Uniform Commercial Code Comment ¶ 5.

Al Maha's Complaint does not include any factual allegations describing Al Maha's actions from February 2011 through March 2012. The Complaint also lacks allegations that Al Maha provided notice to Darley prior to its filing of the March 16, 2012 Complaint. It is *possible* that Al Maha's efforts to assess its rights under U.S. law and to salvage its investment in the Fire Trucks may have been consistent with the purpose of the UCC's notice provisions, for example, if Al Maha's efforts in this regard included settlement discussions with Darley going beyond "mere complaints," *Midwest Generation*, 445 F. Supp. 2d at 933, or communications with Darley regarding opportunities for Darley to cure the Fire Trucks' defective engines. Al Maha, however, has not alleged or argued that it had any contact with Darley during the February 2011 to March 2012 time period. Without more, Al Maha has not alleged "enough facts to . . . nudg[e] [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *compare Midwest Generation*, 445 F. Supp. 2d at 934 (summary judgment) ("the fact that Carbon waited over one year and only put Midwest on notice of this alleged defect in response to Midwest's lawsuit against it makes this claim untimely"); *EPN-Delaval*, 542 F. Supp. at 248 (bench trial) (upon discovery of non-conformity plaintiff "should have revoked its acceptance within a matter of weeks, not months").

Darley's motion to dismiss Count I is therefore granted, and Count I is dismissed with prejudice for failure to state a claim.

II.    <u>Breach of Implied Warranty of Fitness for Particular Purpose (Remedy Pursuant to Section 2-714 of the UCC) (Count II)</u>

Count II of its Complaint is similar to Count I, in that Al Maha again alleges that Darley breached the implied warranty of fitness for particular purpose by selling fire trucks to Al Maha

that could not be operated in Saudi Arabia.   In Count II, however, Al Maha seeks remedies under Section 2-714 of the Illinois UCC, which permits a buyer to recover damages arising from the buyer's acceptance of non-conforming goods.   *See generally* 810 ILCS 5/2-714.   Darley argues that Count II should be dismissed with prejudice because "Al Maha waited far too long to provide Darley with notice of the alleged breach."   (Darley's Mem. at 9.)

To recover damages under Section 2-714, a buyer must first satisfy the notice requirement of subsection (3) of Section 2-607.   Subsection (3) states, in relevant part: "Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."   810 ILCS 5/2-607(3).   "A notification of breach of warranty is sufficient if it lets the seller know that the particular transaction is still troublesome and must be watched."   *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 589 (Ill. 1996) (citing 810 ILCS 5/2-607, Uniform Commercial Code Comment ¶ 4) (internal quotations omitted).   Additionally, "[d]irect notice is not required when . . . the seller has actual knowledge of the defect of the particular product."   *Connick*, 675 N.E.2d at 589.

The purpose of Section 2-607's notice requirement is "to provide a seller an opportunity to cure a defect and minimize damages, protect his ability to investigate a breach and gather evidence, and to encourage negotiation and settlement."   *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1025 (Ill. App. Ct. 3d Dist. 1998) (citations omitted).   "Whether sufficient notice has been provided is generally a question of fact to be determined based upon the particular circumstances of each case . . . [however,] [w]hen no inference can be drawn from the evidence other than that the notification was unreasonable, the question can be decided by the court as a matter of law."   *Id.* at 1026 (citations omitted).   "When delay in notification does not

result in prejudice to the defendant, it is not generally viewed as unreasonable." *Id.*

Viewing the allegations of the Complaint in the light most favorable to Al Maha, the court accepts for purposes of this pending motion that Al Maha notified Darley of the "troublesome" aspects of the sale of the six Fire Trucks in mid-2010, approximately one year after Al Maha's receipt of the Fire Trucks, by informing Darley that "the Fire Trucks could not be operated in Saudi Arabia due to the diesel fuel issue." (Compl. ¶ 18.) Darley argues that a one-year delay is unreasonable as a matter of law, "[g]iven the ease by which any issue with the diesel fuel engine in the Fire Trucks could have been discovered." (Darley's Mem. at 10.) For the reasons discussed in Section I, above, the court holds that whether one year was a reasonable amount of time for Al Maha to discover the non-conformity and notify Darley of its concerns is a question of fact that cannot be resolved at this stage of the litigation. In light of this holding, the court need not address whether the allegations of the Complaint support Al Maha's additional arguments that Darley had actual notice of the non-conformity and was not prejudiced by the one-year delay in notice.

Accordingly, Darley's motion to dismiss Count II is denied.

III.    Equitable Remedies of Rescission and Restitution for Unconscionable Contract (Count III)

In Count III of its Complaint, Al Maha seeks to rescind its contract with Darley and recover as restitution the $2,931,000.00 Al Maha paid for the Fire Trucks, as well as Al Maha's incidental and consequential damages, alleging that Darley's sale of the Fire Trucks to Al Maha constituted an "unconscionable" contract under 810 ILCS 5/2-302. Darley argues that Count III should be dismissed because the allegations of the Complaint do not include "sufficient factual material to state a claim of procedural and/or substantive unconscionability." (Darley's Mem. at 12.)

11

Section 2-302 states that a court may "refuse to enforce" a contract that was "unconscionable at the time it was made," provided that the parties first have been afforded "a reasonable opportunity to present evidence as to [the contract's] commercial setting, purpose and effect." 810 ILCS 5/2-302. Applying Section 2-302, the Supreme Court of Illinois has held that unconscionability "can be either 'procedural' or 'substantive' or a combination of both." *Razor v. Ryundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006). The determination of whether a contract is unconscionable is ultimately "a matter of law, to be decided by the court." *Id.*

A contract is procedurally unconscionable if its terms are "so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to [them]." *Id.* The question of procedural unconscionability focuses on whether there was "some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264 (Ill. 2006) (quoting *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts. Co.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1st Dist. 1980)). Relevant factors include "the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability," "the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Id.* (quoting, in part, *Frank's Maintenance*, 408 N.E.2d at 410). "As a rule, contractual provisions, particularly between two sophisticated business parties, will be enforced unless there is a compelling reason not to do so." *HSBC Mortg. Servs., Inc. v. Equisouth Mortg., Inc.*, 873 F. Supp. 2d 923, 928 (N.D. Ill. 2012) (Leinenweber, J.).

Al Maha has alleged that Darley knew the Fire Trucks "could not be operated in . . . Saudi Arabia, due to the lack of availability of ULSD in Saudi Arabia" and "failed to disclose this

information to Al Maha." (Compl. ¶ 21.) Al Maha argues that this act of concealment "sufficiently state[s] a claim for procedural unconscionability." (Al Maha's Resp. at 10 (relying on *Championsworld LLC v. U.S. Soccer Federation, Inc.*, 726 F. Supp. 2d 961, 974 (N.D. Ill. 2010) (Leinenweber, J.)).) The court disagrees. Darley's concealment did not have the effect of limiting Al Maha's ability to understand the terms of the contract or Al Maha's ability to bargain for different terms, nor did Darley's concealment deprive Al Maha of a meaningful choice related to the bargaining process. Al Maha also does not allege that Darley took any affirmative steps to prevent Al Maha from discovering the concealed information. In *Championsworld*, by contrast, the defendant's misrepresentation had the direct effect of allowing the defendant to use its "artificially enhanced bargaining power to compel . . . exorbitant fees" from the plaintiff. *Championsworld*, 726 F. Supp. 2d at 974. Although Al Maha correctly cites *Levey v. CitiMortgage, Inc.*, for the proposition that "a finding of unconscionability may turn on a showing of of acts of bad faith 'such as concealments, misrepresentations, [or] undue influence,' *Levey v. CitiMortgage, Inc.*, No. 07 C 2678, 2009 WL 2475222, at *4-5 (N.D. Ill. Aug. 10, 2009) (Gottschall, J.) (quoting *Taylor v. Bob O'Connor Ford, Inc.*, No. 97-C0720, 2000 WL 876920, at *3 (N.D. Ill. 2000) (Guzman, J.)), neither *Levey* nor any of the cases cited therein holds that a contract can be considered procedurally unconscionable because of a misrepresentation or act of concealment that did not directly impact the bargaining process itself. Because Al Maha has not alleged any facts plausibly suggesting the existence of a procedural defect that deprived Al Maha of a meaningful choice or of its ability to fairly participate in the bargaining process, the court finds that Al Maha has failed to state a claim for procedural unconscionability.

Substantive unconscionability, on the other hand, "refers to those terms which are inordinately one-sided in one party's favor." *Razor*, 854 N.E.2d at 622. Al Maha argues that its

sales contract with Darley was substantively unconscionable because Al Maha ultimately paid $2,931,000.00 for fire trucks that were "useless" to Al Maha. (Al Maha's Resp. at 10.) The problem with Al Maha's argument is that it goes outside the terms of the contract. Al Maha does not allege or argue that it actually agreed to pay Darley $2,931,000.00 for "useless" fire trucks, although that may have been the result. Because Al Maha does not cite any terms in the contract that were so "one-sided" that they should not be enforced, Al Maha has failed to state a plausible claim for substantive unconscionability.

For the reasons set forth above, Darley's motion to dismiss Count III is granted, and Count III is dismissed with prejudice for failure to state a claim.

IV. Equitable Remedies of Rescission and Restitution for Mutual Mistake (Count IV) and for Unilateral Mistake (Count V)

Al Maha further seeks to rescind its contract with Darley and recover as restitution the $2,931,000.00 Al Maha paid for the Fire Trucks, as well as Al Maha's incidental and consequential damages, under the common law doctrine of mutual mistake (Count IV) and unilateral mistake (Count V). Darley argues that Counts IV and V should be dismissed because Al Maha has not sufficiently alleged "that enforcement of the contract would be unconscionable, that Al Maha exercised reasonable care during the transaction, or that rescission would return Darley to the *status quo*." (Darley's Mem. at 12.) Darley further argues that Counts IV and V should be dismissed because the alleged mistake "is not a mistake of a present or past fact." (*Id*. at 13.)

Under Illinois law, rescission of a contract due to either mutual mistake or unilateral mistake is permitted if "the party seeking rescission shows by clear and convincing evidence that (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is

unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party in status quo." *Siegel v. Levy Org. Develop. Co., Inc.*, 607 N.E.2d 194, 199 (Ill. 1992) (unilateral mistake); *John Burns Const. Co. v. Interlake, Inc.*, 433 N.E.2d 1126, 1130 (Ill. App. Ct. 1st Dist. 1982) (mutual mistake).

Both parties rely on their arguments for and against Count III to support their respective positions regarding the unconscionability element of Counts IV and V. This approach is erroneous, because courts considering the question of unconscionability in the context of a claimed mistake may take into account conditions that "were never contemplated by the contract." *John Burns*, 433 N.E.2d at 1130; *see also People ex rel. Dep't of Public Works & Bldgs. v. South East Nat'l Bank of Chicago*, 266 N.E.2d 778, 782 (Ill. App. Ct. 1st Dist. 1971) ("Where the conditions requisite to relief are present, equity will act in spite of a contract to avoid the unconscionable result."). Taking into account the circumstances alleged in the Complaint that are not reflected in the terms of the contract between Al Maha and Darley, the court declines to rule out the possibility that, as a matter of equity, enforcement of the contract between Al Maha and Darley could be considered unconscionable at a later point in this litigation upon review of the fully-developed record.

Darley next argues that Al Maha failed to sufficiently allege that it exercised due care with respect to the sale, such as an "independent analysis or inquiry to determine whether the Fire Trucks were suitable for use in Saudi Arabia." (Darley's Resp. at 13.) It is well established under Illinois law that "the unilateral mistake of one party to a contract may not be relied upon to relieve that party from its obligations under the contract where the party's own negligence and lack of prudence resulted in the mistake." *Cummings v. Dusenbury*, 472 N.E.2d 575, 579 (Ill. App. Ct. 2d Dist. 1984). Al Maha has alleged that it "relied upon Darley's expertise in the international

sale of firefighting equipment, including fire trucks, to supply Al Maha with fire trucks . . . fit for service and use in Saudi Arabia." (Compl. ¶ 8.) Whether this reliance was reasonable is a question of fact best addressed by an appropriate finder of fact upon a more fully-developed record.

Darley also argues that Al Maha's claim of mutual mistake must be dismissed because "the alleged mistake—that the Fire Trucks would be suitable for use in Saudi Arabia—is not a mistake of a present or past fact." (Darley's Mem. at 13.) Darley correctly notes that Illinois law requires that an alleged mutual mistake involve a question of present or past fact, *see U.S. v. Southwestern Elec. Co-op, Inc.*, 869 F.2d 310, 314 (7th Cir. 1989), but Darley is incorrect in its application of *Southwestern Electric Co-op* to this case. The alleged mutual mistake in *Southwestern Electric Co-op* involved the parties' erroneous prediction of future construction costs for the building of a downstate power plant. In this case, by contrast, Al Maha has alleged that Darley should have known the "the Fire Trucks, which were equipped with HDEs designed, built and certified to run on ULSD in compliance with 2007 EPA standards, could not be operated in most of the rest of the world—and particularly including not in Saudi Arabia, due to the lack of availability of ULSD in Saudi Arabia, where, at all relevant times, only HSD was available." (Compl. ¶ 22.) This allegation concerns a mistake regarding established facts that existed at the time of contracting, and is consistent with the requirements of Illinois law.

Finally, Darley argues that Al Maha "fails to allege that rescission would return Darley to the *status quo*." (Darley's Mem. at 13.) Although the Complaint is not a model of pleading on this point, the court agrees with Al Maha that the court can reasonably infer from Al Maha's attempted March 2012 rejection of the Fire Trucks (Compl. ¶ 24) that Al Maha "could restore Darley to *status quo* by returning the Fire Trucks." (Al Maha's Resp. at 13.) Of course, it will be

Al Maha's burden to prove that it can return Darley to its status quo position before the court will grant Al Maha's request for rescission of the sales contract.

For all of the reasons set forth above, Darley's motion to dismiss Counts IV and V is denied.

V.  Fraud (Count VI), Rescission for Fraudulent Inducement (Count VII), Breach of Fiduciary Duty (Count X), and Constructive Fraud (Count XI)

In Count VI of its Complaint, Al Maha seeks damages under a theory of common law fraud, alleging that Darley fraudulently omitted from its negotiations with Al Maha the material facts that the Fire Trucks' engines "were designed, built and certified only to use ULSD, in compliance with 2007 U.S. EPA standards[,] and ULSD . . . was not, at all relevant times, available in Saudi Arabia," as well as the fact that "some if not all of the Fire Trucks had extensive mileage on their odometers." (Compl. ¶ 51.) Al Maha further alleges that it "relied upon Darley's expertise and judgment in the international sale of firefighting equipment, including fire trucks, to select and provide to Al Maha fire trucks that not only met Al Maha's specifications, but that would be fit for service in Saudi Arabia." (*Id.*) Al Maha relies on these same allegations to claim damages for fraudulent inducement (Count VII),[3] breach of fiduciary duty (Count X), and constructive fraud (Count XI). Darley argues that all four counts must be dismissed because Al Maha has failed to sufficiently allege "that Darley was under a duty to disclose these facts." (Darley's Mem. at 13.)[4]

---

[3] In Count VII, Al Maha also seeks rescission.

[4] Darley initially also argued that Al Maha had not stated a plausible claim for fraudulent concealment, but appears to have accepted Al Maha's clarification in response that it is pursuing a claim for fraudulent omission rather than fraudulent concealment. *See Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1366 (N.D. Ill. 1996) (Alesia, J.) ("A duty to disclose generally arises in two circumstances: (1) when the defendant owes the plaintiff some

"[T]o prove fraud by the omission of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak." *Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. Ct. 3d Dist. 2010) (internal quotation marks omitted). A fiduciary duty or special "duty to speak" is likewise a required element of Al Maha's claims for fraudulent inducement, breach of fiduciary duty, and constructive fraud. *See Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1341 (7th Cir. 1991) (fraudulent inducement by omission); *Autotech Tech. Ltd. Partnership v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006) (breach of fiduciary duty); *Joyce v. Morgan Stanley & Co., Inc.*, 538 F.3d 797, 800 (7th Cir. 2008) (constructive fraud).

"[O]rdinarily in a business transaction each party guards his own interests and no fiduciary duty exists." *Ransom v. A.B. Dick Co.*, 682 N.E.2d 314, 322 (Ill. App. Ct. 1st Dist. 1997). On the other hand, under Illinois law, "a fiduciary duty can arise if the dominant party agrees to exercise its judgment on behalf of the servient party." *Id.* Similarly, "a duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Connick*, 675 N.E.2d at 593. "If a person solicits another to trust him in matters in which he represents himself to be an expert and the offer is accepted, a fiduciary relationship may be found." *Lagen v. Balcor Co.*, 653 N.E.2d 968, 975 (Ill. App. Ct. 2nd Dist. 1995). Because "[t]he essence of a fiduciary relationship is dominance of one party by the other . . . in the absence of dominance and influence there is no fiduciary relationship regardless of the level of trust between the parties." *Benson v. Stafford*, 941

fiduciary duty to make full and fair disclosure and fails to correct a misapprehension of a material fact; or (2) when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension.") (citations omitted).

N.E.2d 386, 397 (Ill. App. Ct. 1st Dist. 2010) (quoting *Lagen*, 653 N.E.2d at 975) (internal quotation marks omitted). "The mere fact that the parties have engaged in business transactions or have a contractual relationship is not itself sufficient to establish a fiduciary relationship." *Benson*, 941 N.E.2d at 397. Similarly, "a slightly dominant business position does not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship." *Lagen*, 653 N.E.2d at 975 (internal quotation marks and alterations omitted).

Al Maha asserts that its allegations "show more than a run-of-the-mill, arm's length commercial transaction between Al Maha and Darley." (Al Maha's Resp. at 15.) Specifically, Al Maha relies on its allegations that "Darley undertook to locate and select fire trucks for Al Maha that would satisfy the specifications of the Petro Rabigh Contract (which did not include an engine-type or fuel-type specification) and that would otherwise be fit for service and use in Saudi Arabia" and its allegation that "Al Maha relied upon Darley's expertise in the international sale of firefighting equipment, including fire trucks, to supply Al Maha" with appropriate fire trucks. (Compl. ¶¶ 8-9.) Al Maha does not allege, however, that Darley specifically invited Al Maha to rely on Darley's expertise in the international sale of firefighting equipment, or that Darley otherwise agreed to accept Al Maha's trust in a fiduciary arrangement. *See Pilot v. Focus Retail Property I, LLC*, No. 09 C 6879, 2010 WL 2836710, at *3 (N.D. Ill. July 19, 2010) (Andersen, J.) ("a fiduciary duty may be imposed in situations in which 'a person solicits another to trust him in matters in which he represents himself to be expert as well as trustworthy'") (quoting *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992)). Although Al Maha alleges that, "[i]n further reliance upon Darley's services, Al Maha did not view or inspect the Fire Trucks before purchasing them," (Compl. ¶ 8), Al Maha does not allege that Darley expected or required Al Maha to forego this opportunity. *Compare Zaremski v. Am. Arbitration Ass'n, Inc.*, No. 11 C

5221, 2012 WL 1623207, at *8 (N.D. Ill. May 9, 2012) (Feinerman, J.) (fiduciary relationship adequately alleged where defendant American Arbitration Association accepted responsibility for billing parties to an arbitration proceeding and "forbade [the plaintiff arbitrator] from contacting the arbitration parties about his payment").

Moreover, Al Maha has not alleged "sufficient indicia of disparity in experience or knowledge such that defendants could be said to have gained influence or superiority over the plaintiff." *Go For It, Inc. v. Aircraft Sales Corp.*, No. 02 C 6158, 2003 WL 21504600, at *2 (N.D. Ill. June 27, 2003) (Hibbler, J.). Al Maha, itself, specializes in the field of "fire protection" in Saudi Arabia. To the extent the alleged fraudulent omission included the fact that ULSD was not available in Saudi Arabia, Al Maha was in at least the same position as Darley to know this vital piece of information. While Darley may have had a "slightly dominant business position" with respect to its knowledge of HDEs manufactured and sold in the United States and the EPA's 2007 standards, *Lagen*, 653 N.E.2d at 975, this is not enough, by itself, to establish a fiduciary relationship or a duty to speak.

Viewing the allegations of the Complaint in the light most favorable to Al Maha, the court finds that Al Maha has failed to allege facts in its Complaint plausibly suggesting that Darley had "a special or fiduciary relationship" with Al Maha "which would raise a duty to speak." *Weidner*, 932 N.E.2d at 605. Darley's motion to dismiss Counts VI, VII, X, and XI is granted, and Counts VI, VII, X, and XI are dismissed with prejudice for failure to state a claim.

VI.    Negligent Misrepresentation (Count VIII)

In Count VIII of its Complaint, Al Maha seeks damages under a theory of negligent misrepresentation, alleging that Darley "should have known or ascertained" that, due to the diesel fuel issue, "the Fire Trucks would not be able to be operated in Saudi Arabia without causing

substantial engine damage." (Compl. ¶ 66.) Darley argues that Al Maha's negligent misrepresentation claim "must be dismissed with prejudice . . . because it is barred by the economic loss doctrine." (Darley's Mem. at 17.)

Under Illinois law, a "plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986). Because Al Maha does not claim damages for personal injury or damage to property, the economic loss doctrine generally applies. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982) (defining "economic loss").

Illinois recognizes an exception to the economic loss doctrine if "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Id.* at 452.[5] Al Maha argues that it has sufficiently alleged "the information provider exception" by alleging "that Darley assumed an advisory role to Al Maha in selecting suitable fire trucks." (Al Maha's Resp. at 17.)

There are two problems with this assertion. First, Al Maha has not alleged that Darley assumed an advisory role to Al Maha in selecting suitable fire trucks. Rather, Al Maha alleges that Gale approached Darley "to purchase firefighting equipment, including fire trucks, that would satisfy the requirements of the Petro Rabigh Contract and otherwise be fit for service in Saudi Arabia" and that "Darley undertook to locate and select fire trucks for Al Maha that would satisfy the specifications of the Petro Rabigh Contract (which did not include an engine-type or fuel-type specification) and that would otherwise be fit for service and use in Saudi Arabia." (Compl. ¶¶

---

[5] Illinois law also provides an exception to the economic loss doctrine "where one intentionally makes false representations." *Moorman*, 435 N.E.2d at 452.

8-9.) Darley then sold the Fire Trucks to Al Maha and shipped them to Al Maha in Saudi Arabia. (*Id.* ¶¶ 10, 12.) In other words, the "end product" of Al Maha's agreement with Darley was to produce the Fire Trucks, not to produce Darley's *ideas* about suitable fire trucks. *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 777 N.E.2d 603, 607 (Ill. App. Ct. 1st Dist. 2002) (distinguishing "pure information providers"). Second, even if Darley did provide Al Maha with its suggestions for suitable fire trucks—a hypothetical fact that is neither alleged in the Complaint nor argued by Al Maha—merely providing information "ancillary to the sale of a product or service or in connection with the sale" does not turn a seller into an information supplier for purposes of the claimed exception. *Id.* Al Maha has not alleged that Darley is "in the business of supplying information as opposed to providing something tangible," *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334 (Ill. 2006), and the court cannot reasonably construe the allegations of the Complaint to support the inference that Darley's opinion was "central to the business transaction." *Gen. Elec. Capital Corp. v. Equifax Servs., Inc.*, 797 F. Supp. 1432, 1443 (N.D. Ill. 1992) (Alesia, J.).

Because Al Maha has not plausibly alleged in its Complaint that Darley is in the business of supplying information, Darley's motion to dismiss Count VIII is granted and Count VIII is dismissed with prejudice.

VII.     Violation of the Illinois Consumer Fraud Act (Count IX)

In Count IX of its Complaint, Al Maha seeks damages under the Illinois Consumer Fraud Act ("ICFA"), alleging that Darley "engaged in a deceptive act or practice, by failing to disclose and concealing from Al Maha" the diesel fuel issue and the "excessive mileage" on the Fire Trucks' odometers. (Compl. ¶ 73.) Darley argues that Count IX must be dismissed "because it is based on a breach of a contractual promise—to provide Fire Trucks suitable for use in Saudi

Arabia." (Darley's Mem. at 18.)

In *Avery v. State Farm Mutual Automobile Insurance Company*, the Supreme Court of Illinois stressed that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005). The "something more" required by the ICFA can include "deceptive acts or practices distinct from any underlying breach of contract," but where "the consumer-fraud and contract claims rest on the same factual foundation" the consumer-fraud claim cannot proceed. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). Thus, the court in *Greenberger* held that the plaintiff "fail[ed] to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise" when the plaintiff alleged only that the defendant insurer "falsely promis[ed] to restore the insureds' vehicles to their preloss condition and fail[ed] to disclose to policyholders that it would not keep this promise." *Greenberger*, 631 F.3d at 399-400.

Al Maha's claim for breach of the implied warranty of fitness for particular purpose and its claim for ICFA violations are partly based on the same factual foundation—that "the Fire Trucks could not be used by Al Maha in service in Saudi Arabia without causing substantial engine damage" due to the diesel fuel issue. (Compl. ¶ 35; *see also* ¶ 73.) The only difference between the two claims is the additional allegation in Al Maha's ICFA claim that Darley failed to disclose[6] the diesel fuel issue to Al Maha. (Id. ¶ 73.)

This additional allegation is important. It is well established that "[a]n omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." *Connick*, 675 N.E.2d at 595 (citing 815 ILCS 505/2). "Furthermore, it is unnecessary to plead a

---

[6] Al Maha also initially alleged in its Complaint that Darley concealed material facts from Al Maha, but Al Maha has affirmatively waived any claim for fraudulent concealment in this case and has not alleged any specific acts of concealment. (*See* Al Maha's Resp. at 26.)

common law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment." *Id.* By alleging that Darley failed to disclose a known product defect—e.g., that the Fire Trucks were not fit for operation in Saudi Arabia—Al Maha has alleged more than "a simple breach of warranty" claim. *Pappas v. Pella Corp.*, 844 N.E.2d 995, 999-1000 (Ill. App. Ct. 1st Dist. 2006) (plaintiffs' ICFA claim not barred by *Avery* where the defendant allegedly "knew its aluminum clad windows would allow water to enter, causing wood rot and deterioration, and failed to disclose these facts to plaintiffs prior to their purchase of the windows"). Because Al Maha has alleged that Darley failed to disclose a known product defect, Al Maha's ICFA claim is not barred under *Avery* as duplicative of Al Maha's breach of contract claim.

In its reply, Darley for the first time argues that Al Maha's Complaint has failed to sufficiently allege "that Darley knew of this alleged 'defect' with the Fire Trucks, namely that they were unsuitable for use because of allegedly unavailable fuel in Saudi Arabia, at the time of purchase." (Darley's Reply at 15, n.12.) ICFA claims must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b). *Greenberger*, 631 F.3d at 399. Allegations based "on information and belief" are permissible, "so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442-43 (7th Cir. 2011). "The grounds for the plaintiff's suspicions must make the allegations *plausible*, even as courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." *Id*. at 443 (emphasis in original).

In this case, Al Maha has alleged "[o]n information and belief" that Darley knew the Fire Trucks would not be operable in Saudi Arabia, in part based on Darley's advertised sale "in recent

years" of "500 HM pumps for Saudi Arabia Civil Defense." (Compl. ¶¶ 7, 22, 74.) This court is required to review pleadings based on "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Common sense suggests that it would be absurd for Darley to intentionally sell Al Maha fire trucks that it knew were inoperable in Saudi Arabia. Nevertheless, because arguments raised for the first time in a reply brief are considered waived, *Nationwide Ins. Co. v. Central Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013), and because discovery on Al Maha's claim for mutual mistake will necessarily cover the topic of Darley's knowledge of the diesel fuel issue, or lack thereof, the court declines to dismiss Al Maha's ICFA claim at this stage of the litigation.[7]

For the reasons set forth above, Darley's motion to dismiss Count IX is denied.

VIII. <u>Inducement of Breach of Fiduciary Duties (Count XII)</u>

Finally, in Count XII of its Complaint, Al Maha seeks damages for induced breach of fiduciary duties, alleging that "Darley made a payment to Mr. Gale, to induce him to breach his fiduciary duties [to Al Maha] by purchasing the Fire Trucks from Darley at an inflated price substantially above the prevailing market price at the time for the Fire Trucks and without seeking a more competitive price from Darley or from some other potential supplier." (Compl. ¶ 89.) Darley argues that Al Maha's claim for induced breach of fiduciary duties must be dismissed because "it fails to specifically describe the alleged collusion" between Darley and Gale. (Darley's Mem. at 19.)

"Under Illinois law, a party is liable for tortious inducement if a plaintiff demonstrates that the defendant (1) colluded with a fiduciary in committing a breach; (2) knowingly participated in

---

[7] Darley also raises for the first time in its reply brief a potential concern that Al Maha "may not have standing under the ICFA" because it purchased the Fire Trucks for use in Saudi Arabia. (Darley's Reply at 15, n. 11.) To the extent Darley is attempting to assert an argument about standing, as opposed to merely flagging this issue for the court's future consideration, this argument is considered waived for purposes of Darley's motion to dismiss.

or induced the breach of duty; and (3) knowingly accepted the benefits resulting from that breach." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 508-09 (7th Cir. 2007) (applying Illinois law and citing *Regnery v. Meyers*, 679 N.E.2d 74, 80 (Ill. App. Ct. 1st Dist. 1997)).

Contrary to Darley's assertion, the court finds that Al Maha has sufficiently described the alleged collusion between Darley and Gale. Al Maha has alleged that Gale "received a payment in excess of $50,000 from Darley in connection with Al Maha's purchase of the Fire Trucks" and that this payment "was not disclosed to Al Maha by Darley or by Mr. Gale." (Compl. ¶ 16.) Gale then agreed, on behalf of Al Maha, to purchase the Fire Trucks for "hundreds of thousands of U.S. dollars over prevailing market prices," to Darley's benefit and Al Maha's detriment. (*Id.* ¶ 17.) In its claim for induced breach of fiduciary duties, Al Maha specifically alleges that "Darley made a payment to Mr. Gale, to induce him to breach his fiduciary duties [to Al Maha] by purchasing the Fire Trucks from Darley at an inflated price substantially above the prevailing market price at the time for the Fire Trucks and without seeking a more competitive price from Darley or from some other potential supplier." (Compl. ¶ 89.) The court can reasonably infer from these allegations that Darley's $50,000 payment to Gale is alleged to have been made without Al Maha's consent and for the purpose of inducing Gale to breach his fiduciary duties to Al Maha. No more is required at this stage of the litigation. Darley's motion to dismiss Count XII is therefore denied.

## CONCLUSION

For the reasons set forth above, "W.S. Darley & Co.'s Rule 12(b)(6) Motion to Dismiss" (Dkt. No. 15) is granted in part and denied in part. Counts I, III, VI, VII, VIII, X, and XI are dismissed with prejudice. Counts II, IV, V, IX, and XII remain pending. Darley's Answer is due on or before 4/12/13. Counsel for both parties are requested to meet pursuant to Rule 26(f) and

jointly file a Form 52 on or before 4/19/13.   This case is set for a report on status and entry of a

scheduling order on 4/23/13 at 9:00 a.m.   The parties are encouraged to discuss settlement.

ENTER:

_____

Chief Judge, United States District Court

Date:   March 27, 2013